Robert J. COOPER, Plaintiff-Appellant,

v.

Ivan ALLEN, Jr., Mayor of the City of Atlanta, Georgia, et al., Defendants-Appellees.

No. 71–3186.

United States Court of Appeals, Fifth Circuit.

Aug. 29, 1972.

Rehearing and Rehearing En Banc Denied Oct. 5, 1972.

Elizabeth Rindskopf, Howard Moore, Jr., Atlanta, Ga., Jack Greenberg, William L. Robinson, New York City, Michael H. Terry, Atlanta, Ga., Robert N. Dokson, Cambridge, Mass., for plaintiff-appellant.

Robert S. Wiggins, Henry L. Bowden, Atlanta, Ga., for defendants-appellees.

Before RIVES, BELL and MORGAN, Circuit Judges.

RIVES, Circuit Judge:

In 1966 appellant Cooper, a Negro, applied for a position as one of Atlanta's municipal golf pros. At that time no form of intelligence testing was employed by the City. Cooper was not hired. Sometime thereafter the City began to require a certain score on the Otis-Lennon Mental Ability Test, Form J, as a prerequisite to employment as a golf pro. In addition an applicant had to satisfy other requisites. In 1969 a golf pro slot opened. Cooper applied. He was compelled to take the Otis test which he failed. As a consequence his application was denied.[1]

Cooper filed a class action in federal district court alleging violations of 42 U.S.C. § 1983 and of Title VII of the Civil Rights Act. (The Title VII claim was not maintainable since Cooper had failed to comply with the conciliatory requirements of that statute.) In Count I of his complaint he alleged that the City's failure to hire him in 1966 was motivated by racial prejudice. The district court found no evidence of such discriminatory intent and denied relief. Cooper does not appeal from that judgment. In Count II Cooper alleged that use of the Otis test to reject his 1969 application violated his civil rights. The district court found jurisdiction under 42 U.S.C. § 1981 rather than under § 1983.

Cooper filed his Count II class action on behalf of all Negroes, no matter for what job they had applied, who were denied jobs with the City on account of failure to pass the Otis test. At the time of his suit the City used the test as a prerequisite to 19 positions other than that of golf pro.[2] The district court

---

1. The parties have stipulated that Cooper's application received no further consideration after he registered a failing test score. (Pretrial Stipulation No. (8)).

2. The positions were as follows: (1) Artist; (2) Assistant Manager of Computer Operations; (3) Budget Analyst; (4) Evaluation Analyst; (5) Fireman; (6) Police Patrolman; (7) Research Specialist; (8) Senior Systems Analyst; (9) System Analyst; (10) Assistant Curator; (11) Superintendent of Golf Courses; (12) Computyper Operator; (13) Assistant Airport Manager; (14)

held the class which Cooper had drawn to be "unreasonably diverse" in that "there are too many uncommon questions of law and fact." The judge therefore limited the class to all Negroes, past, present and future, who have made or will make application for a position as golf pro.

■ Having limited the class the district court proceeded to the merits. The district judge found that although Griggs v. Duke Power Co., 1971, 401 U. S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158, involved a Title VII challenge to testing practices, a challenge which could not be maintained, it could still be said that "Where no Title VII issues are involved * * * and a suit merely alleges a claim under section 1981, the court finds that the actual test used by the employer must bear a substantial relationship to the demands of the work to be performed." Accord, Arrington v. Massachusetts Bay Transportation Auth., D. Mass.1969, 306 F.Supp. 1355. Of course correlation between the test and the job need be present only where it is shown that use of the test serves to discriminate. The district court then found that the effect of utilizing the Otis test disqualified a disproportionate number of blacks seeking to be hired as golf pros. Finally, it concluded that the test did not bear a "substantial relationship to the demands of the work to be performed."

Accordingly, use of the Otis test to evaluate golf pro candidates was permanently enjoined. Cooper also requested back pay from the date on which he was disqualified as a consequence of failing the Otis test and an order requiring the City to hire him for the next available golf pro position. The court denied such relief. The district judge also denied Cooper's prayer for attorneys' fees and ordered that costs be taxed one-half to Cooper and one-half to the defendants.

Social Planning Coordinator; (15) Filed Personnel Assistant; (16) Communications Clerk; (17) Supervisor of Publica-

Cooper appeals, alleging that the district court erred in refusing:

(1) To allow him to maintain his suit on behalf of all Negroes applying for any of the 19 jobs other than golf pro for which the City required the taking and passing of the Otis test;

(2) to award back pay;

(3) to order the City to hire him for the next available golf pro position;

(4) to award attorneys' fees; and

(5) to tax all costs to the defendants.

We affirm in part, reverse in part, and remand for an evidentiary hearing.

I. Class Action.

Cooper contends that the district court erred in narrowing the class for any of the following three reasons: (1) Since he alleges that the City has intentionally discriminated in all 20 of the job positions, there is but one legal and factual issue; (2) the City's use of the Otis test without first having undertaken to validate its relevancy to each of the 20 job classifications is itself a violation of the law giving rise to a cause of action; and (3) the City's admitted failure to take into account any cultural or educational deficiency on the part of Negroes in evaluating the meaning of their test scores violates the instructions of the Otis test, and therefore use of the test scores for Negroes is invalid. Each of these arguments is without merit.

■ (1) First, the record does not support a finding that the City has intentionally discriminated in its hiring policies with respect to any of the 20 job classifications. Cooper cites cases in support of his theory such as Jenkins v. United Gas Co., 5 Cir. 1968, 400 F.2d 28, in which we allowed a class suit seeking redress for plant-wide racially discriminatory practices. But in that case, and

tions; (18) Production Manager; (19) School Data Liaison Assistant.

in the others referred to by Cooper, there was evidence that the employer had intentionally discriminated against blacks. Consequently the employer asserted but one defense, that he did not intentionally discriminate. Here there is no evidence of intentional discrimination on the part of the City. In the absence of such evidence, Cooper cannot successfully challenge the Otis test on a theory that the City of Atlanta used such test with the intent to disqualify a disproportionate number of blacks. Rather, his complaint must be that implementation of the test does in fact disqualify more blacks than whites and that as such it should be banned regardless of the presence or absence of such intent. To meet such challenge, the City must show with respect to each job category at issue that the test is substantially related to one's performance in the position sought. Necessarily, then, such a showing must be made for each of the 20 job classifications under attack. Class treatment for all 20 job classifications seems inappropriate.

■■■ (2) Next Cooper argues that the Otis test may be presumed invalid because the City did not, prior to its implementation, undertake a study to validate its ability to forecast an applicant's performance in each of the 20 jobs at issue. Hence, says Cooper, "the factual propositions are identical: the same test are [sic] being used as an employment criterion, in each category no prior validation studies have been conducted * * * to demonstrate a correlation between test performance and predictability of job performance, and the statistics concerning the test as used in each of the nineteen relevant job categories [i. e., those other than golf pro] clearly showed adverse impact on Blacks." (Appellant's Brief at 22–23.) In effect, Cooper contends that class relief automatically flows from the City's failure to conduct a study of the Otis test's predictive integrity prior to its implementation. Even assuming the record supports a finding that use of the test adversely affects blacks across the board,

Cooper's argument fails. He labors under a misapprehension of the law. There is no requirement that prior to implementation of an intelligence test as an employment criterion the employer must validate its ability to forecast job performance. Rather, once plaintiff shows a discriminatory effect, the burden shifts to defendant to prove the test's validity. Where, as in this case, the plaintiff contends that a test serves to discriminate in 20 job categories, it would be unreasonable to require the employer, in a single law suit, to show that the test accurately predicts performance in each. As the district court concluded, the factual issues are too diverse to warrant class treatment.

■ (3) Finally, Cooper contends that, since the City has disregarded certain instructions accompanying the Otis test, class relief is proper. The Manual of Instructions to the Otis test states in effect that the tester should not expect the same score from one who is culturally or educationally deprived as from one who is culturally or educationally enriched. The City admits that when considering a black applicant it does not consider that blacks are often deprived in these respects. However, failure to consider this alleged inequality among applicants does not relate to the class action issue. The law does not require lower standards of employment for blacks. If the test is substantially related to the demands of the job and no black can pass the test, an employer need not hire any blacks. Again the issue distills into whether one's performance on the Otis test is substantially related to his performance in each of the 20 job categories under scrutiny. As we have said, it would be inappropriate to require the City in a single suit to substantiate the test's relationship to all 20 of the job classifications.

In view of the foregoing considerations, we affirm the district court's judgment that Cooper not be allowed to maintain a class action challenging the 19 job categories other than that of golf pro.

## II. Back Pay and Individual Injunctive Relief.

The district judge held that the Otis test disqualified a disproportionate number of blacks seeking employment as golf pros and that the test did not bear a substantial relationship to the applicant's performance in that job. Accordingly, he enjoined use of the test with respect to the hiring of City golf pros. Neither Cooper nor the City contests that holding. Cooper does complain of the district court's refusal to award him back pay and of the court's failure to order the City to hire him for the next available golf pro position.

■ In refusing back pay, the district court reasoned:

"Because of the insufficiency of the evidence produced by and on behalf of [Cooper], the court is unable to hold that he would have been employed in 1969 had the City not relied on the results of the Otis Test in considering his application. In other words, the evidence simply does not support a conclusion that, had the Otis Test not been used, he would have been the *most* qualified applicant for the position (since there was only one vacancy to be filled)."

(Emphasis in original.) The judge seemingly denied individual injunctive relief on the same rationale. While it is true that, since there was only one job opening at the time Cooper sought employment in 1969, he is entitled to back pay only if he was the most qualified applicant, the district court erred in placing the burden of proof on Cooper. We have already determined that the City's discrimination against him was not intentional. In such circumstances, Cooper is entitled both to back pay and individual injunctive relief unless the City can show by clear and convincing evidence that he would not have been hired [3] even absent the discriminatory testing requirement. *See* Rolfe v. Coun-

ty Board of Education, 6 Cir. 1968, 391 F.2d 77, 80; Hill v. Franklin County Board of Education, 6 Cir. 1968, 390 F. 2d 583, 585; Wall v. Stanly County Bd. of Ed., 4 Cir. 1967, 378 F.2d 275; Smith v. Board of Education, 8 Cir. 1966, 365 F.2d 770; Williams v. Kimbrough, W. D.La., 295 F.Supp. 578, aff'd 5 Cir. 1969, 415 F.2d 874.

It was in 1969 that Cooper applied for the job and was required to take the Otis test. At that time the City imposed four requirements for employment as a golf pro other than a satisfactory test score: The applicant must (1) be between the ages of 25 and 40; (2) have at least 5 years' experience as a golf pro or as an assistant golf pro; (3) possess Class A membership in the PGA, or eligibility therefor; and (4) successfully complete an oral interview. On remand the City must prove by clear and convincing evidence that, in the light of the enumerated qualifications, Cooper would not have been entitled to the job even had there been no requirement to take and pass the Otis test. That is, the City must show that the person actually hired was on the whole better qualified for the job.

On this appeal the City contends that, in 1969, Cooper did not meet even the minimum qualifications because he lacked the requisite 5 years' experience as a golf pro or as an assistant golf pro. Assuming that Cooper did not have such experience (the Record is unclear), it is for the district court to determine whether that factor would have absolutely disqualified Cooper. If, for example, the person actually hired for the position in 1969 did not possess the requisite 5 years' experience, or if any other applicant deemed qualified and allowed to compete for the position lacked that experience, then of course a showing that Cooper did not have such experience would not satisfy the City's burden of proof.

---

3. Since there was but one job opening at the time Cooper applied for the job in 1969, the City's burden, in proving that Cooper would not have been hired anyway, is to show that Cooper was not the most qualified applicant.

III. Attorneys' Fees.

■ Ordinarily, whether to award attorneys' fees is in the sound discretion of the trial judge, and a denial of attorneys' fees is overturned only upon a showing of abuse of discretion. However, in Newman v. Piggie Park Enterprises, Inc., 1968, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, the Supreme Court narrowed the trial judge's discretion:

"If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

"It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover attorney's fee unless special circumstances would render such an award unjust."

Admittedly, *Newman* involved a suit brought under a civil rights statute which makes specific allowance for attorneys' fees. But in Lee v. Southern Home Sites Corp., 5 Cir. 1970, 429 F.2d 290, this Court extended the *Newman* doctrine to section 1982 suits. There is no relevant distinction between a section 1982 suit and a section 1981 suit such as this one. *See* Jones v. Alfred H. Mayer Co., 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189. Moreover, in *Lee* this Court said that, when a court refused attorneys' fees in a 1982 suit (and by analogy in a 1981 suit), it must set out the findings of fact and grounds upon which its refusal rests.

If on remand the district court cannot articulate specific and justifiable reasons for its denial of attorneys' fees, it should make a reasonable award.

Conclusion.

The judgment below is affirmed insofar as the district court narrowed the class of plaintiffs to all present and potential black applicants for the position of City golf pro who were or will be required to take and pass the Otis test as a prerequisite to employment. We remand this case to the district court for the City to undertake to prove by clear and convincing evidence that at the time Cooper sought employment in 1969 he would not have been hired even absent the testing requirement. If the City fails its burden of proof the district court should award back pay and individual injunctive relief. If on remand the district court should continue in its refusal to award attorneys' fees, it is instructed to articulate specific reasons for such action. In light of this opinion the district court should also feel free to reassess costs.

Remanded with instructions.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.