493 F.2d 765
 7 Fair Empl.Prac.Cas. 1228, 7 Empl. Prac.
Dec. P 9361
Robert J. COOPER, Plaintiff-Appellant-Cross Appellee,
v.
Ivan ALLEN, Jr., Mayor of the City of Atlanta, Georgia, et
al., etc., Defendants-Appellees-Cross Appellants.
 No. 73-2849.
 United States Court of Appeals, Fifth Circuit.
 May 6, 1974
Rehearing and Rehearing En Banc Denied June 6, 1974.
 
 Robert Neil Dokson, Michael H. Terry, David A. Webster, Elizabeth R. Rindskopf, Atlanta, Ga., for plaintiff-appellant.
 Robert Wiggins, Henry L. Bowden, Atlanta, Ga., for defendants-appellees.
 Before GEWIN, GOLDBERG and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 On the first appeal of this case asserting racial discrimination in employment,[1] we invalidated a testing procedure and remanded the cause to the district court with directions to grant relief to plaintiff unless the City of Atlanta could prove by clear and convincing evidence that when Robert J. Cooper sought employment in 1969 as a municipal golf professional he would not have been hired even if the City had not used the Otis-Lennon Mental Ability Test as a prerequisite for the position, and to reconsider both the denial of attorneys' fees to Cooper and the assessment of costs. Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972). On remand, the district judge awarded Cooper 12,000 dollars in attorneys' fees 'as a result of his success through the (first) appeal,' but denied his request for back pay and injunctive relief because the City was found to have discharged its burden of proving that James Russell Hazelwood, the golf professional whom defendants had hired for the position sought by plaintiff, was better qualified for the job. Cooper appeals from that judgment asserting error in the district court's denial of individual relief, in its refusal to award additional attorneys' fees incurred on remand, and in its assessment of one-half of the costs against him. The City cross-appeals from the award to Cooper of attorneys' fees. We affirm on both appeals.
 
 
 2
 It is admitted that when Cooper applied for the position of golf pro in 1969, Atlanta required: (1) a satisfactory score on the now-discontinued Otis test; (2) age between 25 and 40; (3) at least five years' experience as a golf pro or an assistant golf pro; (4) Class A membership in the PGA, or eligibility therefor; and (5) a successful oral interview. Having rejected the use of the Otis test, but lacking a basis for determining the final consequence of this adjudication, our prior mandate sent the cause back for further fact development with the provision that, to prevail, Atlanta must show by clear and convincing proof 'that, in the light of the enumerated qualifications, Cooper would not have been entitled to the job even had there been no requirement to take and pass the Otis test. That is, the City must show that the person actually hired was on the whole better qualified for the job.' 467 F.2d at 840. The test was also restated thus: 'Since there was but one job opening at the time . . ., the City's burden . . . is to show that Cooper was not the most qualified applicant.' 467 F.2d at 840 n. 3.
 
 
 3
 On the basis of facts adduced at an evidentiary hearing held after remand, the district court concluded that 'Hazelwood's (prior) experience . . . of having the responsibility of a golf course and running a pro shop outweighs the plaintiff's work history as a pro or assistant pro and is clear and convincing proof that Hazelwood was better qualified for the 1969 vacancy . . ..' Accordingly, the court declined to award back pay or enter an injunction. Cooper's instant appeal broadly attacks this unfavorable finding of fact. He first contends that the district court erred in relying on Hazelwood's previous experience, without assessing his (Hazelwood's) prior performance and ability to perform in the new position. He also asserts that while experience is a facially neutral requirement, it operates unlawfully here to perpetuate past racial discrimination since until recently blacks were traditionally foreclosed from obtaining experience as golf pros. Second, Cooper urges that the City failed to prove Hazelwood was the more qualified by clear and convincing evidence. Cooper's third assignment of error is that the district judge improperly admitted hearsay evaluations of Hazelwood's previous job performance and refused to admit testimony from a banker about Cooper's business ability.
 
 
 4
 The district judge heard testimony from Atlanta Parks and Recreation Department officials and a practicing municipal golf professional about the duties and responsibilities of a City golf pro which demonstrated that teaching lessons only occupies about five percent of his time, whereas the bulk of his duties requires skills wholly unrelated to athletic ability. Of primary importance is a measure of merchandising expertise and financial ability. Golf professionals in Atlanta are principally engaged in collecting and accounting to the City for approximately 40,000 dollars a year in green fees. In addition, he operates concession stands and the pro shop, which he must personally stock with golf equipment and other merchandise from his own finances. He is obliged to keep the course open for business during daylight hours seven days a week. The pro also exercises varying degrees of authority over the entire operation of the golf course from supervising golf starters, assistant pros, and building custodians; to advising on course maintenance and upkeep; to assisting in the organization and management of golf tournaments.
 
 
 5
 It was against this backdrop that the court below assessed the comparative abilities of Hazelwood vis-a-vis Cooper. This task was to be framed 'in light of the enumerated qualifications.' Both men fit the age and PGA membership prerequisites. Evaluation of their oral interviews was considered to be impracticable. Consequently, the district judge was left 'to consider each man's experience as one of the qualifications in determining which one was better qualified for the 1969 vacancy.' Hazelwood, whose educational attainments included a high school diploma and fourteen months of legal training, had been successively employed over a nine-year period by Lockheed Aircraft Corporation, a financing company, and the United States Post Office before he became a golf professional in 1962 at the Toccoa Country Club, an organization of approximately 175 to 250 members which also had approximately 200 non-member players. During his four-year tenure, Hazelwood's duties were gradually expanded until, when appointed golf course superintendent and club manager at Toccoa, he was responsible for the club's entire golfing and social activities. He next spent two years as golf pro and golf course superintendent at the Conley Depot Golf Club, an army-affiliated organization which had about 300 members and a pro shop that averaged 3,300 dollars in gross sales per month. At both courses he was sole proprietor of the pro shop and also was charged with maintaining the condition of the golf course, purchasing and maintaining equipment, and the hiring, firing and supervision of course personnel. In addition to his business obligations, he gave individual golf lessons, conducted clinics for women and children, attended PGA-sponsored seminars and its one-week business school, and competed in several hundred golf tournaments during his years at Toccoa and Conley.
 
 
 6
 Cooper's association with golf began as a player at age seven. He caddyed thereafter as he completed ten and one-half years of elementary schooling in Jacksonville, Florida. As a teen-ager he worked during one summer in a New York City golf shop where he sold golf items and helped the owner, Zeke Hartsfield, give lessons. Cooper returned to Atlanta in 1954 and labored for two years in the repair shop at the Druid Hills Golf Club. He cleaned and repaired clubs and informally offered players tips and lessons. He was variously employed over the next ten years as a truck driver, Fuller Products vendor and a used car salesman. During this time he occasionally worked on the greens and played at the private, predominantly black New Lincoln Golf Club and regularly gave golfing instruction upon request. In 1968 he attended the one-week PGA business school and completed a 30-day correspondence course from the Etonic Shoe Company, which was primarily oriented to personality development and the sale of gold products. From 1969 until the first trial he tried unsuccessfully to establish a used car business on borrowed funds. Cooper's acquaintance with golfing competition included fifteen USGA tournaments and several local tournaments in Jacksonville. He had also participated in the organization of one local golf tournament.
 
 
 7
 This record furnishes more than ample support for the district court's conclusion that Hazelwood clearly and convincingly was, on the whole, better qualified to serve as an Atlanta municipal golf professional. Cooper charges, however, that a comparative evaluation grounded upon previous golf experience discriminates against him on account of his race. It is not arguable that blacks have in the past been excluded from PGA membership and competition and generally relegated to the role of caddy and greenskeeper; but, this to the contrary notwithstanding, the determinative shortcomings in Cooper's employment resume are not attributable either to his race or to past racial discrimination.
 
 
 8
 In strict compliance with our prior mandate, the district court disregarded race and instead weighed the evidence tendered by the City to determine whether 'in light of the enumerated qualifications' the defendants had sustained their burden of proof. We cannot say that the court accorded any prima facie superiority to the fact that Hazelwood's purely golfing experience was greater. Furthermore, contrary to Cooper's assertion on this appeal, the district judge explicitly refused to consider the hearsay, written reports of Hazelwood's employment references upon which city officials had based their opinions of the applicants' comparative abilities. This record disclosed that both men were talented golfers and teachers, perhaps equally so. It was when evaluations of the competing applicants' enterpreneurial expertise and fiscal responsibility were juxtaposed that the composite pointed clearly and convincingly in Hazelwood's favor.
 
 
 9
 Cooper simply lacked the commercial experience that would indicate he possessed the necessary competence to discharge the fiscal and merchandising responsibilities of this golf pro position with the same level of proficiency which Hazelwood's background predicted. This comparative prognostication called for an evaluation of each man's present capability and a forecast of his competency to fill the vacant position. The record shows without dispute that Hazelwood was continuously employed and progressively assigned expanded responsibilities over a six year period by two golf clubs. Such proof permits the reasonable inferences that (1) he performed satisfactorily in these two previous employments and (2) he was capable of discharging the business-type duties of an Atlanta municipal golf pro. These inferences were buttressed by Hazelwood's testimony that under his leadership the Toccoa Country Club showed a profit in all phases of its operations for the first time in its fifteen year history.
 
 
 10
 Cooper argues that the missing commercial link in his background could have been forged by his banker, Lucius Clay, who would have opined that Cooper was industrious and a good credit risk. The district court excluded Clay'stestimony because he was not acquainted with Cooper in 1969 when Cooper's application was under consideration. Although this evidentiary ruling was well within the ambit of the district judge's discretion, its admission still would not have overridden Cooper's lack of mercantile expertise as of the time he applied for the job in question.
 
 
 11
 Cooper asserts that today's appeal presents issues of racial discrimination, but this assertion is not well taken. The record does not warrant the conclusion that the City appraised Cooper poorly because of the lack of gold-related experience which he could not get because of his race. The decisive shortcoming in Cooper's background was that he lacked privity with any comparable business outside the world of golf. If Cooper had been a successful merchant or businessman in any line of endeavor, or if the city's decision to hire had depended upon possession by an applicant of a line of prior experience which his race barred him from acquiring, this case would assume a different appellate posture. Cooper's situation as a comparative commercial novice, however, was wholly unrelated to historic racial discrimination in the golfing profession; thus, the city's decision did not operate to penalize Cooper on account of his race.[2]
 
 
 12
 Plaintiff deprecates all of Hazelwood's supportive evidence about his work history as self-serving and insufficient against the enthusiastic endorsements of Cooper's three 'disinterested' witnesses, who revealed little familiarity with the duties and responsibilities expected of a municipal golf professional. Any infirmities in Hazelwood's background were equally vulnerable to exposure on cross-examination. The weight and credibility of the evidence were matters within the province of the district judge. Equating experience with demonstrated proficiency, and disavowing any reliance on race related deficits, this record affirms his conclusion that 'Hazelwood's (prior) experience . . . is clear and convincing proof that Hazelwood was better qualified for the 1969 vacancy, especially since the duties of the position included the operation of the pro shop and the golf course. This task could be best discharged by a person who, in addition to being proficient in playing the game of golf, has demonstrated the business skill necessary to the successful management of a golf course operation.'[3]
 
 
 13
 Although the district court initially denied Cooper any attorneys' fees for the first trial of this cause, on remand the court granted him 7,000 dollars for services rendered during the original trial and 5,000 dollars for the first appeal. Since he was not successful on remand, the district judge refused to award additional fees or to modify the assessment of costs equally against both parties. Neither action constituted an abuse of discretion. See Johnson v. Georgia Highway Express, Inc., 488 F.,2d 714 (5th Cir. 1974).
 
 The judgment of the district court is
 
 14
 Affirmed.
 
 GOLDBERG, Circuit Judge (dissenting):
 
 15
 I am in substantial agreement with Judge Clark's statement of the law relating to this case. However, because I am not convinced, as are my brothers in the majority, that the district court properly applied that law, I respectfully dissent.
 
 
 16
 The panel majority has made a persuasive case for the proposition that the City of Atlanta carried its burden of proving by clear and convincing evidence that Cooper was not the most qualified applicant for the job of municipal golf professional in 1969. I am satisfied that, within the broad boundaries of the rule that fact findings 'shall not be set aside unless clearly erroneous,'[1] the district court could have found from the record the same facts as did the panel majority; and if the district court had done so, it would have been justified in concluding that the City had carried its heavy burden.
 
 
 17
 On the other hand, the district court might have concluded from the record that the City had failed to provide clear and convincing evidence that Cooper was not the most qualified applicant in 1969. The record reveals a substantial amount of evidence that would support a judgment for appellant Cooper. For example, the only competent testimony regarding the quality of Hazelwood's performance as a golf pro was that offered by Hazelwood himself; several persons testified favorably regarding Cooper's performance in golf-related jobs. Zeke Hartsfield, a professional golfer and pro shop operator for whom Cooper had worked for a few months, testified that he knew both men and that he would choose Cooper over Hazelwood as a city professional. Hazelwood's employment experience prior to becoming a golf professional at Toccoa Country Club and at Conley Depot Golf Club provides no indication that he had gained the merchandising expertise, financial ability, or other skills necessary to success as a municipal golf pro. Between layoffs, Hazelwood did structural assembly work and electrical work for Lockheed; he served as a mail handler and substitute carrier for the U.S. Postal Service; his duties with Community Loan and Town Finance were not disclosed.
 
 
 18
 My purpose here, however, is not to engage in an extended comparison of the qualifications of Cooper and Hazelwood. My quarrel with the district court's decision is not that it adopted the view of the evidence set forth by my Brother Clark rather than the alternative interpretation urged by plaintiff Cooper. The district court erred, in my view, because it adopted neither of those analyses, nor any other comprehensive interpretation of the evidence, but chose instead to base its decision entirely on the applicants' experience as golf professionals. By so doing, the district court neglected its remanded obligation to demand proof that Hazelwood 'was on the whole better qualified for the job.' Cooper v. Allen, 5 Cir. 1972, 467 F.2d 836, 840.
 
 
 19
 Regarding Hazelwood's experience and abilities, the court's decision spoke only of the fact that he was employed at Toccoa and Conley. Comparing Cooper and Hazelwood the court stated, in relevant part:
 
 
 20
 (a) Both men met the age requirement in 1969;
 
 
 21
 (b) Both men fulfilled the eligibility requirement for membership in the PGA;
 
 
 22
 (c) A comparison of performance in oral interview is impossible and, consequently such a factor cannot be considered in determining either . . . applicant's qualifications for the 1969 vacancy;
 
 
 23
 (d) The plaintiff lacked the requisite five years' experience as a golf pro or assistant pro, while Hazelwood fulfilled this requirement by his four years of work as a professional at the Toccoa Country Club and two years' experience at the Conley Depot Golf Club . . ..
 
 
 24
 . . . .f C
 
 
 25
 Hazelwood's experience at Toccoa and Conley of having the responsibility of a golf course and running a pro shop outweighs the plaintiff's work history as a pro or assistant pro and is clear and convincing proof that Hazelwood was better qualified for the 1969 vacancy, especially since the duties of the position included the operation of the pro shop and the golf course. This task could best be discharged by a person who, in addition to being proficient in playing golf, has demonstrated the business skill necessary to the successful management of a golf course operation.
 
 
 26
 The district court did not take note of the quality of Hazelwood's work. Rather the court apparently reached its result on the narrow, empirical basis that Hazelwood had held positions which Cooper did not hold, but which Cooper could not have held in the Atlanta area prior to 1969.
 
 
 27
 The record reveals that before this lawsuit was originally filed in 1969, no Negro had ever been employed by the City of Atlanta as a golf pro or assistant pro. There were no black club pros in the Atlanta area or in the State of Georgia in 1969, with the exception of one man who worked for no salary at the predominantly black New Lincoln Golf Club. Thus, though the criterion of prior experience appears racially neutral on its face, in practice it is not. Cooper had no way of securing the same kind of golf jobs that Hazelwood held. This Court has held, emphatically and repeatedly, that an employment practice whose effect is to deny genuine opportunity to blacks is impermissible and cannot be salvaged simply because it may be facially nondiscriminatory. Morrow v. Crisler, 5 Cir. 1974, 491 F.2d 1053; Local 189, United Papermakers & Paperworkers v. United States, 5 Cir., 1969, 416 F.2d 980, 988; Local 53 of Int'l Ass'n of Heat & Frost I. & A. Workers v. Vogler, 5 Cir. 1969, 407 F.2d 1047; cf. Ross v. Dyer, 5 Cir. 1963, 312 F.2d 191, 196.
 
 
 28
 I would remand this case to the district court once again, this time for a determination of whether Cooper or Hazelwood was more capable in 1969 of doing the tasks required by the job. This would necessitate the binocular task of measuring the applicants' pertinent qualifications-- merchandising ability and salesmanship, financial ability and responsibility, golfing and instructional skill, etc.,-- rather than the monocular comparison of job titles.
 
 
 
 [1]
 Jurisdiction was predicated on 28 U.S.C. 1343(3) and 42 U.S.C. 1981
 
 
 [2]
 Because we find no race discrimination at the bottom of this case, we decline to draw an analogy here to cases in which seniority or other facially neutral employment criteria perpetuate the lingering effects of past discrimination. See, e.g., Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364 (5th Cir. 1974); United States v. Georgia Power Co., 474 F.2d 906 (5th Cir. 1973); Paperworkers Local No. 189 v. United States, 416 F.2d 980 (5th Cir. 1969); see also Morrow v. Crisler, 491 F.2d 1053 (5th Cir. 1974) (en banc); NAACP v. Allen, 493 F.2d 614 (5th Cir. 1974). We also note that the City hired its first two black assistant golf professionals in 1971
 
 
 [3]
 In his dissent, Judge Goldberg concludes that the district court's decision turned entirely on a comparison of the applicants' prior experience as golf professionals. Looking to the findings of fact as a whole and the unabridged evidentiary record before the district judge, we cannot agree that his view was so myopic. The record discloses a gross disparity in business ability between Hazelwood and Cooper. We consider this quantum difference in proven, job-related skills to be dispositive of this appeal
 
 
 [1]
 Fed.R.Civ.P., Rule 52(a)