514 F.2d 106
 9 Empl. Prac. Dec. P 10,201
 Alvin MIMS, for himself and others similarly situated,
Plaintiff-Appellee-Cross-Appellant,
v.
Ray WILSON, in his official capacity as Sheriff of Okaloosa
County, Defendant-Appellant-Cross-Appellee.
 No. 73-3828.
 United States Court of Appeals,
Fifth Circuit.
 June 4, 1975.
 
 Brooks Taylor, Crestview, Fla., for defendant-appellant-cross-appellee.
 Kent Spriggs, Tallahassee, Fla., Jeffry Mintz, Jack Greenberg, New York City, for plaintiff-appellee-cross-appellant.
 Appeal from the United States District Court for the Northern District of Florida.
 Before AINSWORTH, GODBOLD and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Alvin Mims brought a class action against the defendant sheriff on behalf of all past, present, and future black applicants for employment in the sheriff's office of Okaloosa County, Florida. The complaint alleged racial discrimination, in violation of Title 42, U.S.C., Secs. 1981 and 1983, and Title VII of the Civil Rights Act of 1964, as amended, Title 42, U.S.C., Sec. 2000e et seq. Mims requested back pay and the right of first refusal as to next vacancies for identified members of the class denied employment solely because of race, a prohibitory injunction against further racial discrimination, an affirmative black recruitment program to remedy past discrimination, and an award of costs and attorney's fees. The Title VII claim was dismissed for failure to exhaust remedies before the Equal Employment Opportunity Commission and plaintiff proceeded under Secs. 1981 and 1983.
 
 
 2
 The evidence established that the defendant had at no time hired any blacks for positions as deputy, dispatcher, guard, or clerk. Accordingly by pre-trial order, the resident district judge, Judge Arnow, granted plaintiff's motion for partial summary judgment. Although unable to conclude from the evidence that defendant had intentionally discriminated against plaintiff and his class,[1] he found a clearly established pattern and practice of racial discrimination in employment. Then, evidently following our decision in Cooper v. Allen, 5 Cir. 1972, 467 F.2d 836, the judge ruled that the plaintiff and the class were entitled to damages and injunctive relief unless the defendant could show by clear and convincing evidence that they would not have been hired absent racial discrimination.[2] See Id. at 840. Should the defendant sheriff fail to meet this burden, damages were to be assessed for the difference between the compensation due the applicant had he been hired and what he earned in other employment.
 
 
 3
 After the pre-trial conference, the parties stipulated that the defendant chose not to adduce evidence under the burden imposed by the pre-trial order as to any of seven identified class members (Note 1, supra) and the case proceeded to judgment.
 
 
 4
 The precise nature of the relief granted by the final judgment, and the judge's reasons therefor, unfortunately are so confusing and unclear as to preclude our effective review of the final order below. The difficulty is compounded by obvious departures from the legal principles set forth as guides by the pre-trial order.[3] We therefore vacate and remand for clarification and further proceedings consistent with this opinion.
 
 
 5
 As we understand the order entered below, defendant was enjoined, properly, from future racial discrimination in any and all employment practices. The order directed the seven known class members, if they so chose, to reapply, presumably to update personal information and to demonstrate continued interest in employment and continued qualification, and directed the sheriff to consider their new applications in order of initial application. Because of two immediate openings the sheriff was ordered to offer these positions to class members in the indicated precedence, subject to qualification under any Florida statutory eligibility requirements.
 
 
 6
 We cannot discern, however, whether class members were otherwise given a right of first refusal in the event the two positions were filled before each had been proffered the positions, or whether, after the two positions were filled, remaining class members were to be considered in a pool along with other black and white applicants, or not at all. The two who accepted employment, and only these two, were to be awarded back pay because the district judge believed it would be "nonsensical" to award back pay to those class members, presumably the remaining five, who will not be hired and would not have been hired absent discrimination because they applied when there were no vacancies or failed to meet employment requirements. There was no attempt to reconcile the patent inconsistency of this position with the finding that plaintiffs "have clearly demonstrated their right to injunctive relief and damages" and the failure of defendant to meet his burden of proving that identified class members applied when there were no vacancies or were not qualified.
 
 
 7
 The parties on appeal indicate perplexity and confusion as to the duty imposed by the final order upon the defendant sheriff. The appellant believes he was ordered to hire all seven named class members if they elect to accept employment unless he can show they fail to meet employment requirements, forcing him to fire several white employees and preventing him from hiring white applicants who are better qualified. He appeals on this narrow remedial issue of forced bumping and preferential hiring.
 
 
 8
 The plaintiff-appellee does not interpret the order as requiring, and he does not seek, bumping. Nor does he interpret the order as giving all seven identified class members the right of first refusal. He cross appeals this and the failure to award all seven back pay as error, pointing to the defendant's stipulated refusal to meet his evidentiary burden of showing inferior qualifications and vacancies. In addition, plaintiff is dissatisfied with the failure to require an affirmative recruiting program to dispel defendant's image in the black community of hiring whites only. Finally, he challenges the award of attorney's fees[4] as inadequate and unexplained.
 
 
 9
 The ambiguities inherent in the order and the defendant's obvious difficulties in attempting compliance with an order which he cannot understand and which we cannot clarify mandate that we vacate and remand for clarification. In view of some of the contentions urged on appeal, we make some observations as guidelines to be followed by the district court on remand.
 
 
 10
 In granting relief Judge Allgood operated under the assumption that "the customary remedies under Title VII are not necessarily applicable under Secs. 1981 and 1983." He also indicated a belief that the award of damages was subject to his discretion, depending upon his evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary relief, and the advisability of a deterrent, citing Lee v. Southern Home Sites Corp., 5 Cir. 1970, 429 F.2d 290, 294. It is not discernible whether this was a reference to compensatory or punitive damages. We point out that the Court in Lee was concerned with punitive, not compensatory, damages.
 
 
 11
 The attention of the district court is directed to Pettway v. American Cast Iron Pipe Co., 5 Cir. 1974, 494 F.2d 211, 243-44; Cooper v. Allen, supra; Local 53 of the International Association of Heat and Frost Insulators and Asbestos Workers v. Vogler, 5 Cir. 1969, 407 F.2d 1047, and Diaz v. Pan American World Airways, Inc., S.D.Fla.1972, 346 F.Supp. 1301, as amended, 348 F.Supp. 1083, D.C.Fla., which cases fully support granting "rightful place", or preferential hiring, in order to restore discriminatees to positions they would have been in but for discrimination.[5]
 
 
 12
 We also invite attention to Pettway, supra, which fully applied remedies available under Title VII to Sec. 1981 suits, and to the following language of Judge Tuttle speaking for the Pettway panel:
 
 
 13
 (T)he parameters of discretion, within which a district court may deny back pay in employment discrimination cases, are defined by the purpose for which Congress enacted, and the courts have interpreted, the statutory back pay provisions. Congress in authorizing courts, expressly under Title VII and impliedly under section 1981, to grant equitable relief to persons harmed by employment discrimination, included the discretion to award back pay. This Court and commentators have noted that the provision for back pay in Title VII was modeled on the similar provision in the National Labor Relations Act, 29 U.S.C.A. § 160(c), whose object is "designed to vindicate the public policy of a statute by making the employees whole for losses suffered on account of an unfair labor practice." Nathanson v. NLRB, 344 U.S. 25, 27, 73 S.Ct. 80, 97 L.Ed. 23 (1952). An award of back pay has been recognized by this Court as not a "mere adjunct of some more basic equity" but as an "integral part of the whole relief which seeks, not to punish the respondents but to compensate the victim of discrimination." United States v. Georgia Power Co., supra, 474 F.2d at 921. Johnson v. Goodyear Tire & Rubber Co., supra, 491 F.2d at 1375; Johnson v. Georgia Highway Express, supra (5 Cir.), 417 F.2d 1122. Under Title VII and section 1981 the injured workers must be restored to the economic position in which they would have been but for the discrimination their "rightful place." Because of the compensatory nature of a back pay award and because of the "rightful place" theory, adopted by the courts, and of the strong congressional policy, embodied in Title VII, for remedying employment discrimination, the scope of a court's discretion to deny back pay is narrow. Head v. Timken Roller Bearing Co., supra (6 Cir.), 486 F.2d (870) at 876; Moody v. Albemarle Paper Co., supra (4 Cir.), 474 F.2d (134) at 141-142. Once a court has determined that a plaintiff or complaining class has sustained economic loss from a discriminatory employment practice, back pay should normally be awarded unless special circumstances are present. (Footnotes omitted)
 
 
 14
 494 F.2d at 251-53. This principle, under this Court's decision in Cooper v. Allen, supra, is fully applicable, not only to employees who have been denied promotion and equal opportunities after hire but also to applicants who have not been hired solely because of their race.
 
 
 15
 As noted earlier, while the district judge found that plaintiffs "clearly demonstrated their right to injunctive relief and damages", he also appeared to believe that some would not have been hired at the time of their initial application because no vacancy existed or they were unqualified, obviating any duty to pay back wages. Because of this inconsistent view of the record and defendant's stipulated refusal to present evidence on this issue, we direct the district court to determine whether each class member would have been hired but for race in light of the standards and burden of proof set out in Pettway, supra, 494 F.2d at 251-63; Johnson v. Goodyear Tire & Rubber Co., Synthetic Rubber Plant, 5 Cir. 1974, 491 F.2d 1364, 1379-80; United States v. Georgia Power Co., 5 Cir. 1973, 474 F.2d 906, 921-22, and Cooper, supra, 467 F.2d at 840. Since discrimination against the class was proved, a presumption of entitlement to back pay arises in favor of class members, although the individual employee still is under an initial burden to bring himself within the class and to show the deleterious economic consequences he has suffered. See Pettway, 494 F.2d at 259-60. The burden of proof then shifts to the employer to show by clear and convincing evidence that each would not have been hired absent discrimination. Id. If the defendant fails to meet this burden the discriminatee is entitled to an award to be computed as of the date he would have been hired absent discrimination to the date he is offered a position or would have terminated employment if hired,[6] less mitigation. Such an award is necessary to place a discriminatee in the position he would have occupied absent discrimination.
 
 
 16
 The district court on remand should also consider the necessity and the feasibility of directing affirmative recruitment efforts aimed at the black population. He should consider the manner of recruitment, and the ratio of black/white applicants as compared with the black/white ratio in the community to determine whether the black applicant flow is disproportionately small as a result of defendant's reputation in the community for hiring whites only, in which case affirmative efforts to dispel the effects of past discrimination would be indicated. See Morrow v. Crisler, 5 Cir. 1974, 491 F.2d 1053 (en banc), cert. denied, --- U.S. ---, 95 S.Ct. 173, 42 L.Ed.2d 139.
 
 
 17
 Finally, the cross-appeal asserts that the award of attorney's fees was inadequate. The parties, prior to judgment, stipulated to an award which would pay plaintiffs' attorney $5775.00, or $50 an hour for his estimated 115.5 hours plus $490.79 costs. The district judge disregarded their agreement and directed an award of $3500.00 plus the agreed costs. While plaintiff acknowledges that the district court was not bound to enforce the stipulated sums, he argues that he should have been given an opportunity to introduce evidence if the court chose to reject the parties' agreement and that he was entitled to have the court state its reasons for reducing the stipulated award.
 
 
 18
 The fixing of attorney's fee must be left to the discretion of the trial judge, but the failure below to state the premise for limiting the award gives us no basis to determine whether that discretion was properly exercised. Baxter v. Savannah Sugar Refining Co., 5 Cir. 1974, 495 F.2d 437, 447, cert. denied, --- U.S. ---, 95 S.Ct. 515, 42 L.Ed.2d 308; Johnson v. Georgia Highway Express, Inc., 5 Cir. 1974, 488 F.2d 714, 717. Since we vacate the order entered below, it will be appropriate upon remand to permit plaintiff's counsel to introduce evidence on this issue. Baxter ; Johnson v. Georgia Highway Express, Inc. Additional services rendered by counsel in connection with this appeal should also be taken into account. While the district judge on remand may resort to his own experience and expertise, he should weigh the request for fees in the light of the standards enumerated in Johnson v. Georgia Highway Express, Inc., and by his order disclose the basis for the attorney's fee awarded.
 
 
 19
 Vacated and remanded.
 
 
 
 [1]
 There were seven class members identified, including the named plaintiff, Mims
 
 
 [2]
 Further clarifying the issues remaining for trial, the order provided:
 (I)f it appears that at a time there existed a vacancy to be filled by the defendant and there was on hand at that time an application from plaintiff or one of the class he represents and a person other than a black man was hired instead of the black applicant, then the burden will be on the defendant sheriff to show by clear and convincing evidence that the person so hired for that vacancy had qualifications that were superior to the black applicant.
 
 
 [3]
 The transfer of the case to a visiting judge, District Judge Allgood, after Judge Arnow undertook a lengthy trial elsewhere in his district may partially explain the failure to adhere to the pre-trial order
 
 
 [4]
 Without indicating any basis for computation, Judge Allgood ordered that $3500 attorney's fee be paid to plaintiff's counsel from the 1972-73 budget of the sheriff's department, and that $490.79 of proven costs be paid from the same source
 
 
 [5]
 The district court may have been influenced in limiting relief to two members of the class by the consideration that the racial composition of employees in the sheriff's office would then mirror the racial composition in the community. This bears no legal relevance to the relief the discriminatees are entitled to assuming each had qualifications superior to those of the white hired in his stead. It stops short of returning the black discriminatee to his "rightful place", while there is no constitutional right to proportional racial representation in employment. See NAACP v. Allen, 5 Cir. 1974, 493 F.2d 614, 618
 The district judge upon remand may determine this issue to be moot. After entry of the final order below, the defendant submitted a report showing that when he notified the known class members to reapply for employment, one was hired, a second failed to meet employment standards, and the remainder either declined to reapply or did not respond to the invitation.
 
 
 [6]
 For example, should the discriminatee commit a crime for which a white would be discharged, the back pay award may be terminated as of that date