James L. TOWNSEND, Plaintiff,

v.

The EXXON COMPANY, U. S. A. and
the Esso Workers' Union, Inc.,
Defendants.

Civ. A. No. 76–1961–M.

United States District Court,
D. Massachusetts.

Sept. 1, 1976.

Richard L. Neumeier, Parker, Coulter, Daley & White, Boston, Mass., for plaintiff.

Robert Glass, Nutter, McLennen & Fish, Boston, Mass., for defendant The Exxon Co.

Lawrence E. Katz, Flamm, Mason, Paven & Feinberg, Boston, Mass., for defendant Union.

## MEMORANDUM

MURRAY, District Judge.

■ Plaintiff seeks a preliminary injunction to compel defendant The Exxon Company, U.S.A. (Exxon) to rehire him as an employee or in the alternative to restrain Exxon from hiring any other truck driver before hiring him. The action is brought under 42 U.S.C. §§ 1981 and 2000e *et seq.* against Exxon and The Esso Workers' Union, Inc. (Union).[1] The motion for preliminary injunction was heard on a stipulation of the parties, the testimony of witnesses called by plaintiff and Exxon, and the oral and written arguments of counsel.

### I

Plaintiff is a black male who was employed by Exxon as a non-regular delivery truck driver at its Everett Terminal on October 21, 1974. During the 1974–75 heating season Exxon hired 12 non-regular truck drivers including plaintiff. Among

---

1. The plaintiff also names as a defendant Esso Workers' Union, Inc. The Union has moved to dismiss the complaint against it because plaintiff has made no allegations of discriminatory practices by the Union. However, plaintiff seeks reinstatement with retroactive seniority. The Union therefore is a necessary party since it may be implicated if the court grants reinstatement with seniority. Fed.R.Civ.P. 19.

the 12 were 7 white males, 1 white female and 4 black males. Plaintiff was terminated on April 19, 1975 with other non-regular truck drivers. Exxon did not offer plaintiff employment thereafter. On November 10, 1975 plaintiff filed a complaint against Exxon, charging it with race discrimination, with the Massachusetts Commission Against Discrimination (MCAD), and on the same day filed a complaint charging race discrimination against Exxon with the Equal Employment Opportunity Commission (EEOC).[2]

Plaintiff was hired by Exxon's Dispatch Supervisor, Ronald Tierney. When hired plaintiff was informed by Tierney that as a non-regular driver he would be terminated at the end of the heating season or after six months, whichever came sooner, that if plaintiff's work was satisfactory he would be considered for permanent employment if a vacancy occurred, and that Tierney was not making any guarantee of future or continued employment with Exxon. Exxon's employment policy was to hire non-regular employees to drive delivery trucks during the heating oil season; they received the same pay rates and other benefits of regular employees; they did not become members of the Union and were not covered by the collective bargaining agreement; they were hired on a temporary basis not to exceed six months. Plaintiff was hired pursuant to this employment policy.

When hired plaintiff had considerable experience as a truck driver, but limited experience driving tractor-trailer combinations, and no experience driving tank trucks with liquid cargoes. He had a Massachusetts driver's license permitting him to drive any vehicle except a school bus. His driving record with Exxon included an unauthorized delivery of 100 gallons of fuel oil to another Exxon employee, and involvement in two motor vehicle accidents. The circumstances attending these events are as follows:

(a) After making the unauthorized delivery, plaintiff did not turn in the delivery slip on the day of the delivery. He was questioned about the 100 gallon shortage after returning to the terminal to settle the business of the day. On the following day plaintiff turned in a delivery slip and payment. The unauthorized delivery occurred because plaintiff was unfamiliar with Exxon's procedures of deliveries of products to other Exxon employees. After plaintiff's supervisor investigated the matter, no disciplinary action was taken but plaintiff was instructed about proper procedures.

(b) No personal injuries and only minor property damage resulted from the motor vehicle accidents, and in neither case did plaintiff's fault contribute to the accidents. No disciplinary action against plaintiff followed from Exxon's investigations.

Plaintiff had difficulty adequately performing the paperwork connected with his duties as a truck driver.

During the heating oil season Tierney received written evaluations on each of the non-regular drivers from the line supervisors, so called. Plaintiff was rated an average to slightly below average employee in terms of delivery driver performance. Two of the line supervisors rated plaintiff as a slow learner who required an excessive amount of supervision. Based on all the reports Tierney rated plaintiff last among the non-regular employees, and recommended to Dougherty, his successor as Dispatch Supervisor, that plaintiff not be rehired. Notwithstanding plaintiff's unfavorable evaluations he was not discharged before the end of the heating oil season, and during that season he was considered qualified to perform the duties of a delivery driver at the Everett Terminal. Several

---

**2.** On March 2, 1976 at plaintiff's request MCAD waived jurisdiction over his complaint. On March 10, 1976 plaintiff requested EEOC to seek preliminary relief on his behalf under 42 U.S.C. § 2000e–5(f)(2). On June 21, 1976 EEOC District Counsel replied to plaintiff's counsel that it was unlikely the EEOC investigation would be completed within 180 days from the filing of the charge with EEOC.

times during the Fall of 1975 plaintiff inquired about job openings, and on each occasion the Dispatch Supervisor told him no work was available.

Between April 1975 and January 1976, Exxon rehired all of the seven white drivers it had hired as non-regulars during the 1974–75 heating oil season. None of the black non-regular delivery drivers was rehired or offered reemployment. Hodge, a black, was discharged in January 1975 for unsatisfactory performance; Donald Black, a black, was not rehired because he was suspected of carrying a firearm on the job in violation of a company rule; Lancaster, a black, was not rehired because his health and family situation made it difficult for him to take a night job, and under the bargaining agreement a driver needed several years' seniority to bid on a day job; and plaintiff was not rehired because the Dispatch Supervisors believed they could find a better delivery driver in the labor pool. Exxon insisted that plaintiff's race was not a factor in this determination. Ten other drivers, in addition to the seven white non-regular drivers, were hired by Exxon between April 1975 and April 1976. Of these, five were white and five were black.

II

A. *Jurisdiction of the Title VII Claim*

■ Exxon has moved to dismiss the complaint on the ground, among others, that plaintiff has not alleged he received a right-to-sue letter from EEOC, and therefore that he is not authorized to bring a Title VII action. 42 U.S.C. § 2000e–5(f)(1).[3]

■ A right-to-sue letter is a jurisdictional prerequisite to a judicial determina-

tion of the merits of a Title VII action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Gibson v. Kroger Co.*, 506 F.2d 647, 650 (7th Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975). Whether such letter is a prerequisite to an action seeking only preliminary relief pending the outcome of employment discrimination proceedings before EEOC is a matter on which the courts are not in agreement.[4] In *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, Civil No. 75–3617–M (D.Mass., Jan. 5, 1976), *appeal docketed*, No. 76–1019 (1st Cir.), this court found a legislative intent to permit aggrieved persons to bring an action for preliminary relief to preserve the status quo in certain circumstances. *Hochstadt* involved an existing employment relation and a charge of retaliatory discharge.

■■ The court finds no reason to extend the holding of *Hochstadt* to cover the facts in this case. Under Title VII the preferred remedy is the settlement of grievances by conciliation, *see United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), and the statute requires that EEOC have an opportunity to reach a settlement "through conference, conciliation, and persuasion before the aggrieved party [is] permitted to file a lawsuit". *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). The right-to-sue letter evidences exhaustion of the favored administrative remedies and is therefore a jurisdictional prerequisite to a civil action. Where, unlike plaintiff's posi-

---

**3.** Exxon also moves to dismiss because it was not served with notice of the charge within ten days. 42 U.S.C. § 2000e–5(b) and (e). The EEOC is required to serve notice of a charge upon the person charged with an unlawful employment practice, but its failure to do so does not prejudice the rights of an employee in a subsequent Title VII action. *See Russell v. American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975).

**4.** *Compare, e. g., Berg v. Richmond Unified School District*, 528 F.2d 1208, 1211–12 (9th

Cir. 1975), *petition for cert. filed*, 44 U.S.L.W. 3459 (U.S. Jan. 28, 1976); *Drew v. Liberty Mutual Insurance Co.*, 480 F.2d 69, 72 (5th Cir. 1973), *cert. denied*, 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974), *with, e. g., Gradillas v. Hughes Aircraft Co.*, 407 F.Supp. 865 (D.Ariz. 1975); *Nottelson v. A. O. Smith Corp.*, 397 F.Supp. 928 (E.D.Wis.1975); *Troy v. Shell Oil Co.*, 378 F.Supp. 1042 (E.D.Mich.1974), *appeal dismissed as moot*, 519 F.2d 403 (6th Cir. 1975); *Collins v. Southwestern Bell Telephone*, 376 F.Supp. 979 (E.D.Okl.1974).

tion in *Hochstadt*, the employment of plaintiff here ended more than a year prior to the filing of the complaint, the court views plaintiff's position more like that of an unsuccessful applicant for employment who alleges a discriminatory refusal to hire. In such cases, preliminary relief is denied one who does not have a right-to-sue letter. *See Jerome v. Viviano Food Company, Inc.,* 489 F.2d 965 (6th Cir. 1974). Further, in *Hochstadt*, unlike here, the plaintiff alleged a retaliatory discharge in violation of 42 U.S.C. § 2000e–3, a circumstance which particularly demanded preliminary relief. Consequently, the limited exception found in *Hochstadt* to the requirement of a right-to-sue letter should not be extended to this case.

### B. *Likelihood of Success on Merits*

■ If jurisdiction be assumed, however, the court finds that plaintiff has established the elements of a prima facie case of race discrimination. He is a member of a class protected from discrimination by the statute; he was qualified to perform the duties of a truck driver; he sought reemployment in that capacity but Exxon did not rehire him after April 19, 1975; and Exxon did seek and employ other truck drivers at the same terminal. *See McDonnell Douglas Corp. v. Green, supra.*

■ The showing of the prima facie case shifts the burden to Exxon to show a legitimate, nondiscriminatory reason for refusal to rehire plaintiff. Exxon has established that plaintiff (1) made an unauthorized delivery of fuel oil, (2) was involved in two minor motor vehicle accidents, and (3) had difficulty performing required paperwork and needed close supervision. Exxon did not attach significant weight to the first two incidents when they occurred, and neither will the court now in evaluating Exxon's reasons for refusal to rehire plaintiff. However, there was adequate evidence to show that plaintiff's performance in maintaining accurate records in the discharge of his duties was sub-par when measured against the rank and file employee, and that Exxon could obtain a better

qualified employee to perform the duties of delivery truck driver from the local labor pool. These reasons for Exxon's refusal to rehire are legitimate and nondiscriminatory.

■ In appraising Exxon's contention that plaintiff's race was not a factor in its decision not to rehire plaintiff, the court considers and gives weight to the fact that 5 of 17 employees hired in 1975–76 were black. However, an employer may not successfully rebut a prima facie case of discrimination merely by showing that it subsequently hired other minority employees. *See EEOC v. Tufts,* 421 F.Supp. 152 at 164 (D.Mass.1975). But such a showing is relevant, and has a tendency to bolster the reliability of other evidence of nondiscriminatory reasons for the refusal to rehire.

■ In proscribing race discrimination in employment practices and decisions, *see Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), Title VII is not a statute which guarantees employment to minorities. Exxon has met its burden of showing a nondiscriminatory business reason for not rehiring plaintiff, and plaintiff has not offered evidence to demonstrate that the ostensible reason is a pretext. Consequently, plaintiff has not shown a likelihood of success on his Title VII claim.

### C. *The Section 1981 Claim*

■ The court has jurisdiction of plaintiff's complaint on the basis of his claim under 42 U.S.C. § 1981 notwithstanding plaintiff's failure to exhaust his administrative Title VII remedies. *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 274 (10th Cir. 1975). Section 1981 reaches race discrimination practices and decisions in employment. The courts have applied the concept of the prima facie case of race discrimination developed in *McDonnell Douglas Corp. v. Green, supra,* for Title VII cases to cases under section 1981 alleging race discrimination in employment. *See, e. g., Alvarez-Ugarte v. City of New York,* 391 F.Supp. 1223 (S.D.N.Y.1975). Thus, as discussed above under the Title VII claim,

plaintiff has made out a prima facie case here under section 1981. But as also shown above, Exxon has maintained its burden of showing a legitimate nondiscriminatory reason for the refusal to rehire, and that showing is equally applicable to plaintiff's section 1981 claim. Where a refusal to rehire is based on legitimate business considerations, not on racial grounds, there is no violation of section 1981. *See, e. g., Cooper v. Allen,* 493 F.2d 765 (5th Cir. 1974).

### III

*Conclusions*

The court lacks subject-matter jurisdiction of the claim for preliminary relief under Title VII, 42 U.S.C. § 2000e *et seq.* Assuming *arguendo* that the court does have subject-matter jurisdiction of the Title VII claim, the plaintiff has not demonstrated a likelihood of success on the merits entitling him to a preliminary injunction. The court has jurisdiction of the claim for preliminary relief under 42 U.S.C. § 1981, but the plaintiff has failed to demonstrate a likelihood of success on the merits of his claim under section 1981 entitling him to a preliminary injunction.

Accordingly, plaintiff's motion for preliminary injunction is denied.