427 F.Supp. 82 (1977)
Pat OLIVER et al., Plaintiffs,
v.
The MOBERLY MISSOURI SCHOOL DISTRICT, a public school corp., et al., Defendants.
No. N74-32C.
United States District Court, E. D. Missouri, N. D.
January 3, 1977.
*83 *84 Harold L. Holliday, Kansas City, Mo., Raymond Howard, Jr., St. Louis, Mo., for plaintiffs.
Hunter, Chamier & Lee, Moberly, Mo., J. David Collins, Hadley Grimm, Collins & Grimm, Macon, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
Plaintiffs in this case have charged the defendants with discriminatory hiring practices in violation of various Civil Rights statutes. The Court has jurisdiction of this matter under 42 U.S.C. § 2000e-5(f)(3),[1] 28 U.S.C. § 1331 and 42 U.S.C. § 1981.
All three of the plaintiffs in this action are black. They hold lifetime teaching certificates in various subjects that qualify them to teach in the State of Missouri. All three applied for teaching positions with defendant for the 1974-75 school year. None were hired.
This case was heard by the Court sitting without a jury. After considering the entire *85 record, the Court makes the following findings of fact and conclusions of law.

Findings of Fact
1. In May of 1974, plaintiff Pat Oliver received a bachelor of science degree in education from Northeast Missouri State University and received a lifetime secondary teaching certificate from the Missouri Department of Education. She was certified to teach history.
2. In May of 1974, plaintiff Brenda Hinton received a bachelor of science degree in education from Northeast Missouri State University and received a lifetime elementary teaching certificate from the Missouri Department of Education, certifying her to teach elementary education.
3. In May of 1974, plaintiff Connie Ganaway received a bachelor of science degree in education from Northeast Missouri State University and received a lifetime elementary teaching certificate from the Missouri Department of Education, certifying her to teach elementary education.
4. The defendant Moberly School District had a student enrollment of three thousand and ninety-two, grades Kindergarten through Twelfth, for the school year ending in 1974.
5. During the period, 1956-57 through the school year 1974-75, the average black student enrollment of the Moberly School District ranged from seven to eight per cent.
6. The job market from which defendant attracts applicants is a mostly rural area in North Central Missouri. Most of these applicants are from Northeast Missouri State University, Central Methodist College, or the University of Missouri at Columbia. Less than two per cent of these applicants are black. A similar percentage of black applicants compete for employment with nearly every other public educational institution in the Northern Missouri area.
7. Defendant employed no black teachers from 1955 to 1969. From 1969 to 1974 there were several black teachers hired, but there were never more than three on the faculty at one time. The percentage of black teachers employed by defendant during that time was never greater than approximately two per cent (2%).
8. All three plaintiffs made timely and complete applications for teaching positions with defendant in the Spring of 1974.
9. Plaintiffs Hinton and Ganaway were certified to teach in positions for which defendant hired ten (10) other applicants.
10. Plaintiff Oliver was certified to teach in a position for which defendant hired three (3) other applicants.
11. Defendant considered several factors to determine what applicant was the most "qualified" for a particular teaching position. An applicant's training in the subject taught, work experience, college grade point average, and recommendations were all considered. Each applicant was offered an interview. No standardized measure[2] of these factors exists, but the same general method of evaluation is used by a large number of school administrators in the Northern Missouri area. This process is highly successful in selecting competent teachers.
12. Under the standards used by defendant to select teachers, all ten (10) of the applicants selected to teach elementary education were better qualified to teach than plaintiffs Hinton and Ganaway.
13. Under the standards used by defendant to select teachers, plaintiff Oliver was as qualified or more qualified than at least one of the applicants selected for the secondary social science positions for which she was competing.
*86 14. Plaintiff Oliver did not apply for a teaching position with any other school district for the 1974-75 year.
15. Plaintiff Oliver's earnings from 1974 to the time of trial were substantially the same as they would have been had she been employed by defendant.

Conclusions of Law
Plaintiffs, of course, have the initial burden of showing discriminatory action on the part of defendants. A prima facie case may be made by showing four factors. First, the plaintiff must show that she belongs to a racial minority. Second, she must show that she applied and was qualified for a job for which the employer was seeking or accepting applications. Third, she must show that she was rejected. And fourth, she must show that after the rejection the position remained open and the defendant continued to seek or accept applications from persons of plaintiff's qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); United States v. Hazelwood School Dist., 534 F.2d 805 (8th Cir. 1976). Once this initial showing is made, it is the defendant's responsibility to rebut the inference of discrimination.
It is obvious that all three plaintiffs have met the first three requirements of the Hazelwood test. Thus, the Court must determine how the fourth factor applies to this case and whether it was met. To make this determination, it is necessary to define what "qualified" means in this context.
In Hazelwood the individual job applicants made a prima facie case by showing that they were rejected without interviews and further applications were then received by the employer. That procedure was not followed here. The applications, including plaintiffs', were initially reviewed by Superintendent Clark. This review included a personal interview. The Superintendent then presented the applicants to the School Board in an "executive session". After some questions, the Board accepted his recommendations. The adoption of these recommendations at a later regular meeting of the Board was a formality that had no real impact upon the selection process.[3]
Plaintiffs argue that anyone who is certified to teach in Missouri is "qualified" to teach in defendant's system. They further argue that their applications were rejected at the initial Board meeting and other applications received further consideration up to the time that the jobs were formally awarded. Plaintiffs thus conclude that they establish a prima facie case of discrimination.
The facts simply do not support that conclusion. In cases where a minority applicant is considered at the same time all other applicants are considered, the plaintiffs must show more than their possession of the bare legal qualifications of employment.[4] She or he must show that the person actually hired was less qualified or only as well qualified as the plaintiff. United States v. Hazelwood School Dist., 534 F.2d at 814. Only then does the burden shift to the employer to show some non-discriminatory reason for its choice.[5]
Thus, the Court must compare the plaintiffs' credentials with those of the persons actually hired by defendant. In making this analysis it should be remembered *87 that school officials are experienced in the evaluation and selection of teachers while the courts are not. This Court can and must review the credentials of the various applicants with a non-discriminatory eye. It will not, however, act as another superintendent for the Moberly School District. At certain points in the hiring process an administrator must exercise judgment. If the defendants can show that a reasonable system of evaluation is applied in a non-arbitrary manner, the Court will not substitute its judgment for defendants'. Smith v. Board of Education of Morrilton School Dist. No. 32, 365 F.2d 770 (8th Cir. 1966).
Superintendent Clark testified in detail about the method used in comparing plaintiffs' applications with their competitors. Unlike the Hazelwood system, defendants' hiring is centralized. The Superintendent considers many factors, some objective and some subjective. The plaintiffs' contention that defendants' hiring system is highly susceptible to the abuses of discrimination cannot be accepted. The defendant must view certain things as objective indicators of an applicant's qualifications. College grades and recommendations, for example, are certainly a reflection of someone's subjective evaluation. But when viewed by an employer, they speak from the cold certainty of a printed page. The courts cannot expect employers to step back in time and evaluate the possible discriminatory practices of some other institution. Even the plaintiffs agree that no precise formula exists for comparing applications.
In reviewing the candidates for the elementary education positions, the conclusion is inescapable that plaintiffs Hinton and Ganaway were not the subject of discrimination. Their grade point averages, work experience, and recommendations all indicate that they were less qualified than their competitors. These are the same factors that indicated to the Court the discriminatory practices in the Hazelwood case. 534 F.2d at 814-818.
On the other hand, plaintiff Oliver's "objective" qualifications were as good as at least one of her competitors.[6] Defendants' proffered motive for their failure to hire plaintiff Oliver are unconvincing.
Defendants' primary objection to hiring plaintiff Oliver was that she had "stood them up" the previous year. She was contacted to fill a vacancy to be created in the fourth quarter of the school year 1973-74. She agreed to do so but subsequently failed to appear. Defendants' evidence tended to show that plaintiff Oliver gave them no notice that she would be unable to fill the position.
This incident quite frankly troubles the Court. It is apparent that plaintiff Oliver did not use her best efforts to notify defendant of the problem. On the other hand, the incident seemed to be the one reason that this plaintiff was not hired. Yet it did not appear that Superintendent Clark made much of an effort to convey his strong feelings to plaintiff Oliver and offer her the opportunity to make an explanation. The interview would have been a logical place for such an exchange. Thus, it is not without some hesitance that the Court concludes that defendant failed to rebut the inference of discrimination as to plaintiff Oliver.
Finally, plaintiffs argue that historical and statistical evidence of discrimination strongly supports an inference of discrimination in this case. This is an individual discrimination action and not a "pattern and practices" case. Thus, any such evidence is not conclusive and is merely an aid in reaching conclusions in this case. McDonnell Douglas v. Green, supra.
After carefully considering the relevant data, the Court concludes that it does not alter the result here. Defendant's record in hiring minorities is not exemplary. However, it does not appear that defendant has engaged in such deliberate discrimination *88 in the past[7] as to require a finding in favor of plaintiffs Hinton and Ganaway. The specific evidence in their case is still more convincing.
Plaintiff Oliver's remedy is described plainly by Hazelwood. 534 F.2d at 819. Defendants shall place plaintiff Oliver on a preferred hiring list immediately. It is certainly within the discretion of this Court to award back pay in excess of any earnings actually received by plaintiff Oliver. Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). However, in light of the fact that her actual earnings were nearly the same as they would have been under defendants' employment, there is no reason to do so. The Court is also influenced by plaintiff's failure to seek alternate employment as a teacher.
Upon plaintiff Oliver's application, the Court will consider whether attorney's fees are appropriate.
NOTES
[1] Defendants' claim that plaintiffs did not name all of the present parties in their E.E.O.C. complaint must fail. Defendants were certainly aware of the administrative proceedings and had the opportunity to participate in them.
[2] The evaluation is not arbitrary, however. There was a great deal of testimony indicating which factors were given weight under certain circumstances. For example, if an applicant had teaching experience, college grade point averages would not be as important. Recommendations from that job would assume greater status. A high grade point average in one's major subject might tend to offset somewhat a low over-all grade point average. Thus, although no "standards" were used, different school systems would often select the same applicants out of a constant group using this system.
[3] It would not be unfair to the School Board to say that, as a practical matter, Superintendent Clark selected the teachers. The testimony was that the School Board accepted his recommendations as a matter of course.
[4] Were the Court to adopt plaintiffs' suggestion, any certified minority applicant who is rejected by a school system using the quite common "executive session" could make a prima facie case. There are simply too many other factors that determine one's "qualifications" to reach that conclusion. It should also be noted that most of the 39 applicants in Hazelwood who did not make a prima facie case were certified.
[5] The problem is academic in this case. Regardless of who had what burden when, there was sufficient evidence to show that plaintiffs Hinton and Ganaway were not the subjects of discrimination, and that legitimate, non-discriminatory reasons existed for defendants' actions.
[6] Defendant relied heavily on the qualifications of one applicant to aid in extra curricular activities. It was not shown, however, that an existing employee of defendant or another more qualified applicant could not perform the same functions.
[7] The fact that the percentage of blacks in the student body exceeded the percentage of blacks on the faculty may be some indication of discriminatory hiring practices. Cf. United States v. Hazelwood School Dist. supra. This figure is significantly less convincing than the small number of black teachers applying for jobs, however. Indeed, defendants' evidence showed that in 55 of the 56 Missouri School Districts with a black student population of more than 5%, the percentage of black teachers was smaller than the percentage of black students. It should be noted that practices of the defendant that constitute part of its hiring history received judicial approval in Brooks v. School Dist. of Moberly, Missouri, 267 F.2d 733 (8th Cir. 1959), cert. denied, 361 U.S. 894, 80 S.Ct. 196, 4 L.Ed.2d 151 (1959). See also Mitchell v. West Feliciana Parish School Bd., 507 F.2d 662 (5th Cir. 1975).