Henrietta CANTY

v.

Graciela OLIVAREZ, Director of the Community Services Administration, f/k/a Office of Economic Opportunity.

Civ. A. No. C74–1945A.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 18, 1978.

J. Timothy Lawler, Edwin Marger, Atlanta, Ga., for plaintiff.

Robert J. Castellani, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER AND OPINION

HAROLD L. MURPHY, District Judge.

This case came for hearing before the court on November 30, 1977. On the basis of evidence presented at that time and the appeal file of the Civil Service Commission relating to Henrietta M. Canty, the court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff, Henrietta Canty, a black female, was hired on May 9, 1966 by a federal government agency, the Office of Economic Opportunity ("O.E.O."). The O.E.O. was the predecessor of the Community Services Administration ("C.S.A.").

2. Henrietta Canty is a graduate of Johnson C. Smith University in Charlotte, North Carolina. She has attended Temple University and received a Masters Degree in Finance from the University of Pennsylvania. Prior to her employment by the federal government, she held positions ranging from teacher to securities salesman.

3. Henrietta Canty is an articulate, intelligent and very self-confident individual. Ms. Canty has made, and often filed, innumerable charges of racially and sexually discriminatory treatment by her superiors. It is beyond the capacity and inclination of the court to review each of these allegations. Fortunately, Ms. Canty's counsel has reduced these allegations to four specific areas.

*First Personnel Action*

4. At the beginning of her employment by O.E.O., Henrietta Canty was classified at a level of GS-9.

5. On February 5, 1968, plaintiff filed a discrimination complaint with the O.E.O. alleging that she should have received a higher initial classification because of her qualifications and responsibilities.

6. As a result of the complaints filed by her, Henrietta Canty was reclassified to GS-11/1, retroactive to May 9, 1966; to GS-12/1, retroactive to May 21, 1967; to GS-12/2, retroactive to May 19, 1968; and to GS-12/3, retroactive to May 18, 1969.

7. On September 20, 1971, Henrietta Canty was paid $3,815.85 as backpay for the discrepancies to her O.E.O. classification.

8. Ms. Canty contends the award is insufficient because it should have included a reclassification to GS-13/1 on May 19, 1968 and a promotion to GS-14/1 on May 18, 1969. Ms. Canty relies upon an alleged "pattern and practice" within her agency to promote professional level employees with good performance ratings to the next grade level after one year's service in grade.

9. There is no requirement and no promotion ladder which would insure the grade level promotions Ms. Canty seeks. Grade level promotions are not automatic and the review panel's earlier decision to limit its award of retroactive promotions to grade twelve implicitly rejects the contentions made here. The evidence before the court is insufficient to authorize a court-ordered promotion which is largely discretionary within an agency.

10. Despite some informal complaints, Ms. Canty made no further administrative appeal of the award. A civil action relevant to this issue was not filed until September 30, 1974 more than three years after final agency action on the charge.

*Second Personnel Action*

11. In March, 1971, the position of Supervisory Program Specialist, level GS–14, became vacant. Applications were sought for this position and Henrietta Canty was one of the aspirants.

12. The appointing authority, Regional Director Roy Batchelor, chose Charles Clark, a black male, for the position. The selection of Charles Clark entailed a cancellation of the application procedure and the filling of the position by inter-agency transfer.

13. The procedures utilized by the Regional Director in the selection of Charles Clark were in conformity with Civil Service Commission Regulations.

14. At the time of Charles Clark's selection, he was a candidate for a grant under the Public Affairs Fellowship Program for study at Stanford University. At the time of his selection by the Regional Director, it was known that Charles Clark had been selected from O.E.O. for the scholarship. Admission to Stanford University was not made until after the transfer to the post of Supervisory Program Specialist.

15. Charles Clark was chosen as Supervisory Program Specialist as the best qualified person and as the only interested party whose selection would entail a reassignment and not a promotion.

*Third Personnel Action*

16. In February, 1972, Acting Regional Director Dr. John Dyer proposed to discharge Ms. Henrietta Canty because of two acts of insubordination. Shortly after the notice of discharge was mailed, Mr. William "Sonny" Walker, a black male, became Regional Director.

17. Mr. Walker reviewed the proposed discharge and found a lack of substantial evidence as to the first charge. Mr. Walker determined dismissal was an excessive penalty for the remaining acts and he invoked a fifteen-day suspension.

18. Mr. Walker pursued an investigation of counter-charges filed by Ms. Canty while Ms. Canty sought relief through the Civil Service Commission. The appeal to the Civil Service Commission's Board of Appeals and Review was cancelled when Mr. Walker directed a rescission of the suspension. Ms. Canty was given back pay for the period of the suspension.

19. The Regional Director, Mr. William Walker, rescinded the suspension by his own act. By letter dated August 30, 1974, Ms. Canty was notified that the Civil Service Commission would not undertake further administrative review.

*Fourth Personnel Action*

20. In 1974, the position of Chief of Grantee Program, Support Division, became open. Ms. Henrietta Canty, among others, applied for the position.

21. Ms. Canty was one of five candidates listed as eligible for the position. The appointing authority, Charles Moore, Deputy Director of the agency, chose Dr. Robert Clarke, a white male, for the position.

22. Dr. Robert Clarke was chosen as, in the opinion of the appointing authority, the best qualified candidate. The agency appointment procedures vest the appointing authority with sole discretion in the selection of the best qualified candidate.

23. In selecting the best qualified candidate, a multi-step procedure is utilized. For a post with a GS classification of thirteen or higher, advertisements for the vacancy are made nationally within the agency.

24. Applications are referred to the personnel office for a review. The personnel office selects those who are eligible and provides background material, including such items as the application and supervisor's ratings, for a review panel.

25. The review panel is ordinarily composed of three individuals. The panel will develop a "promotion certificate" which constitutes a list of up to five eligible candidates for the vacancy. The appointing authority may, in his discretion, interview all of the individuals on the promotion certificate or none of the individuals. The appointing authority must interview all of the candidates if he interviews any candidate.

26. The appointing authority has the discretion to appoint any of the applicants

on the promotion certificate, without respect to the order in which they appear.

27. Dr. Robert Clarke was determined to be the superior candidate for the position of Chief of Grantee Program, Support Division. Dr. Robert Clarke had previous experience in a grantee situation, having worked for an organization which had sought funds to assist low income citizens.

28. Dr. Robert Clarke had evaluation experience relevant to the grantee program. Dr. Robert Clarke had a masters and a doctorate in public administration. Dr. Robert Clarke had demonstrated an ability to deal with people and had the potential to be an excellent supervisor.

29. Ms. Henrietta Canty was rejected in favor of Dr. Robert Clarke. By way of contrast, Ms. Canty did not have the experience in a grantee situation. Ms. Canty did not have a doctorate degree. Ms. Canty had not demonstrated an ability to deal with her superiors in the bureaucratic hierarchy.

30. Dr. Robert Clarke was chosen because of his own demonstrated ability and potential, not because of negative aspects of any other candidate's employment record.

31. The appointing authority, Mr. Charles Moore, did not reject Ms. Canty because of prejudice arising from complaints filed by her. Mr. Moore has demonstrated the ability to appoint an individual who had filed charges against Mr. Moore himself, as reflected in the selection of his own administrative assistant.

*Departure*

32. In a special election of June 10, 1975, Henrietta Canty was elected to the General Assembly of Georgia. Ms. Canty left the O.E.O. because of a Civil Service Commission prohibition against a covered employee participating as a candidate in a political party's primary.

## CONCLUSIONS OF LAW

*Jurisdiction*

■ 1. Section 717 of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e–16, provides the exclusive remedy available to an individual federal employee complaining of employment discrimination. The preconditions to assertion of rights under this section include the seeking of relief within the agency which has allegedly discriminated. Review of the agency decision by the Civil Service Commission may be sought. A party objecting to the Commission's disposition of his complaint must file suit within 30 days of the Commission's final decision. Alternatively, he may proceed directly to court without action by the Civil Service Commission by filing suit within 30 days of receipt of notice of the agency's final decision. 42 U.S.C. § 2000e–16(c). *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Gissen v. Tackman,* 537 F.2d 784, 786 (5th Cir. 1976).

■ 2. Parties who have received a final determination on, or who have abandoned their administrative claims prior to March 24, 1972 are not entitled to relief under 42 U.S.C. § 2000e–16. *Eastland v. Tennessee Valley Authority,* 553 F.2d 364, 367 (5th Cir. 1977); *Clark v. Goode,* 499 F.2d 130, 132–33 (4th Cir. 1974). See also, *Hazelwood School District v. United States,* 433 U.S. 299, 309, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).

■ 3. Failure to file a timely complaint within the provisions of 42 U.S.C. § 2000e–16 deprives the court of subject matter jurisdiction. *Eastland,* supra, 553 F.2d at 368; *Gissen,* supra, 537 F.2d at 786; *Carter v. Lynn,* 401 F.Supp. 1383, 1386 (D.D.C.1975).

■ 4. A federal court always has the power to inquire into its jurisdiction. *McNutt v. General Motors Acceptance Corporation,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Burleson v. Coastal Recreation, Inc.,* 572 F.2d 509 (5th Cir. 1978). In circumstances where the court considers jurisdictional issues sua sponte, the burden to establish the existence of jurisdiction re-

mains with the plaintiff. *Basso v. Utah Power and Light Company,* 495 F.2d 906, 910 (10th Cir. 1974); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1214 at 107 (1969). See particularly, *Gibson v. Kroger Company,* 506 F.2d 647, 650 (7th Cir. 1974).

■ 5. A plaintiff's obligation to file a civil action within thirty days of final administrative action on a charge of employment discrimination is not waived by requests for reconsideration or by an agency's failure to notify the complainant of the existence of jurisdictional prerequisites. *Eastland,* supra, 553 F.2d at 368; *Clark,* supra, 499 F.2d at 133–34. *Chickillo v. C.O., Naval Air Engineering Center,* 406 F.Supp. 807, 809 (E.D.Pa.1976), *aff'd mem.,* 547 F.2d 1159 (3rd Cir. 1977).

*Prima Facie Case*

■ 6. The procedures for establishing a charge of employment discrimination by an agency of the federal government are the same as those for any action under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–16(d); *Abrams v. Johnson,* 534 F.2d 1226, 1230–31 (6th Cir. 1976).

■ 7. As to each alleged act of discrimination, plaintiff has the burden of establishing a prima facie case of discrimination because of her race or sex. This burden may be satisfied by an applicant's showing

"(i) that [she] belongs to a racial minority; (ii) that [she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [she] was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

■ 8. The elements of a prima facie case vary with the factual situations of each case. *McDonnell Douglas,* supra, 411 U.S. at 802 n. 13, 93 S.Ct. 1817; *Peters v.* *Jefferson Chemical Company,* 516 F.2d 447, 450 (5th Cir. 1975).

■ 9. The elements of a prima facie case of race discrimination are not established where the party receiving the position sought is of the same race as the party alleging discrimination. See, *Price v. Maryland Casualty Company,* 561 F.2d 609, 612 (5th Cir. 1977); *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 735–36 (5th Cir. 1977).

■ 10. In filling a position for which there is only one opening, the selection of an individual who is not a member of each of the alleged discriminatees' protected minorities does not, by itself establish a case for unlawful discrimination. "An employer's isolated decision to reject an applicant who belongs to a racial minority does not show that the rejection was racially based." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

11. The importance of the *McDonnell Douglas* standard lies not in the establishment of immutable standards for a prima facie case but in affirming the principle that the plaintiff in a Title VII action must carry the initial burden of providing evidence sufficient "to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Teamsters,* supra, 431 U.S. at 358, 97 S.Ct. at 1866. See, *Bittar v. Air Canada,* 512 F.2d 582, 582–83 (5th Cir. 1975).

■ 12. The plaintiff in a Title VII case must demonstrate that he or she possessed all the relevant characteristics of the parties favored by the employer, thereby giving rise to the inference that some impermissible classification was a factor in their treatment. *Mosley v. United States,* 425 F.Supp. 50, 58 (N.D.Cal.1977). See also, *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282–84, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

■ 13. To establish a prima facie case of proscribed discrimination, plaintiff is obligated to prove that she was as well or

better qualified than the person actually selected. The existence of minimal qualifications, in the absence of proof of equivalency with the selected candidate, is insufficient. *Frink v. U. S. Navy,* 16 FEP Cases 67, 69 n. 2 (E.D.Pa.1977); *Oliver v. Moberly Missouri School District,* 427 F.Supp. 82, 86 & n. 4 (E.D.Mo.1977).

*Employer's Burden*

■ 14. Once plaintiff has established a prima facie case, the burden "to articulate some legitimate, non-discriminatory reason" shifts to the alleged discriminator. *McDonnell Douglas,* supra, 411 U.S. at 802, 93 S.Ct. at 1824; *Causey v. Ford Motor Company,* 516 F.2d 416, 420 n. 6 (5th Cir. 1975). The court looks to the defendant for this explanation because "he is in a position to know whether he failed to hire a person for reasons which would exonerate him." *Hodgson v. First Federal,* 455 F.2d 818, 822 (5th Cir. 1972).

■ 15. When a party alleges discrimination on a basis proscribed by Title VII in the denial of a promotion, the degree of subjectivity permitted in assessing an applicant's qualifications varies with the duties of the position sought and the selecting party's professional interaction with an applicant. See, *Cova v. Coca Cola Bottling Co.,* 574 F.2d 958, 960 (8th Cir. 1978); *Frink,* supra, 16 FEP Cases at 69–70.

■ 16. Objective criteria which may be demanded in choosing between applicants for multiple positions entailing the performance of some mechanical skill may be inappropriate in choosing between applicants for a single position requiring supervisory talents and temperament. Compare, *East v. Romine Incorporated,* 518 F.2d 332 (5th Cir. 1975) and *Early v. Klassen,* 15 FEP Cases 297 (D.D.C.1977).

■ 17. An applicant's prior work experience may be considered, and may provide the determinative factor, in assessing an applicant's suitability for a particular position. *Cooper v. Allen,* 493 F.2d 765, 768 (5th Cir. 1974). See also, *McDonnell Douglas,* supra, 411 U.S. at 803, 93 S.Ct. 1817.

■ 18. When an employer can demonstrate the absence of proscribed discrimination in the advancement of employees, and when an employer can demonstrate it acted in good faith in weighing the talents of each applicant and then choosing a man or a white over a woman or a black, no case has been made under Title VII. *Causey,* supra, 516 F.2d at 420; *Pond v. Braniff Airways, Inc.,* 500 F.2d 161, 165 (5th Cir. 1974).

*Pretext Allegations*

■ 19. Plaintiff bears the burden of proving any allegations that an otherwise valid employment decision is merely a pretext to disguise racial or sexual discrimination. *McDonnell Douglas,* supra, 411 U.S. at 804, 93 S.Ct. 1817; *Franklin v. Troxel Manufacturing Co.,* 501 F.2d 1013, 1015 (6th Cir. 1974).

■ 20. A plaintiff retains the burden to demonstrate by a preponderance of the evidence that the decision to remove a job from the competitive application process and utilize approved procedures to transfer a supervisor from within an agency to fill the position was a pretext to obscure discriminatory motivation. A plaintiff's inability to demonstrate the availability of a job or her complete qualifications for that job deprives her of the ability to create a prima facie case. *Teamsters,* supra, 431 U.S. at 358 n. 44, 97 S.Ct. 1843.

*Attorney's Fees*

21. Title VII provides that a court may, in its discretion, award the prevailing party reasonable attorney's fees as part of the costs. 42 U.S.C. § 2000e–16(d); 42 U.S.C. § 2000e–5(k).

■ 22. A "prevailing party" may be one who obtains relief from an unfair employment decision in the administrative stages of 42 U.S.C. § 2000e–16 and without a recourse to the courts for a judicial determination on the merits. *Parker v. Califano,* 561 F.2d 320, 324 (D.C.Cir.1977); *McMullen v. Warner,* 416 F.Supp. 1163, 1167 (D.D.C. 1976). But compare language to the con-

trary, *Williams v. General Foods Corp.,* 492 F.2d 399, 408 (7th Cir. 1974).

## SUMMARY

The facts before the court present a case difficult for resolution. The plaintiff, Henrietta Canty, has demonstrated that she was a competent, yet highly independent employee of her agency. What she has not shown is that the employment decisions of which she complains were the product of race or sex discrimination.[1]

◼ With respect to the first personnel action, plaintiff has failed to establish or even allege her compliance with the jurisdictional prerequisites to suit. Furthermore, it appears clear that final administrative action on this issue occurred prior to the effective date of the 1972 amendments to Title VII. Finally, plaintiff has not demonstrated her original classification was the product of race or sex discrimination.

◼ With respect to the second personnel action, plaintiff's proof of a prima facie case by the four part *McDonnell Douglas* standards was forestalled by the cancellation of the competitive application procedures. Plaintiff did not carry her burden of showing the transfer of Charles Clark was a pretext for sexual discrimination. Shortly after his appointment, Charles Clark did obtain a leave of absence to study at Stanford University. In the competitive process to select a temporary successor, Henrietta Canty was an applicant who again was not chosen. A male was deemed to be the best qualified candidate for the post and, although Ms. Canty complains of that selection, she does not include it as one of the four specified actions providing the focus for this litigation.

◼ With respect to the third personnel action, the court's review of the file indicates the complaint was filed within thirty days of notification of final Civil Service Commission action. It is clear plaintiff would not have prevailed on the suspension issue if she had not secured legal counsel and undertaken an administrative appeal. The request for $3750.00 in attorney's fees has not been controverted as to amount and stands approved.

◼ With respect to the fourth personnel action, the court is also without jurisdiction. Additionally, plaintiff has failed to establish her case on the merits. The parties have stipulated that Henrietta Canty applied for the position, was rated as qualified by the reviewing panel, and was not selected. The stipulation does not disclose she was better or as well qualified as the individual selected. Dr. Robert Clarke was clearly qualified and possessed credentials in most respects superior to Ms. Canty's. In the absence of any evidence of preselection or a higher numerical rating of Ms. Canty, it cannot be stated that Ms. Canty established a prima facie case. *Abrams v. Johnson,* supra, 534 F.2d at 1231.

The courts have long decried reliance upon subjective standards of evaluation. In the selection or rejection of an individual to fill one of several openings requiring certain objective technical skills, reliance on subjective criteria is objectionable and the courts have so held. The choice of one person from many who possess the minimal objective qualifications to fill a single position entailing non-quantifiable attributes necessarily requires a partially subjective evaluation, however. In selecting a supervisor, for example, there is no numerical indicia of ability to work with and direct others. Nevertheless, relevant objective factors of Dr. Robert Clarke's background are superior to those of Ms. Canty and he is "on the whole better qualified for the job." *Cooper v. Allen,* supra, 493 F.2d at 770 (Goldberg, J., dissenting) quoting, *Cooper v. Allen,* 467 F.2d 836, 840 (5th Cir. 1972).

Ms. Canty has not attempted to establish a case of discrimination by reliance on statistics. Similarly, she has not undertaken to compare her qualifications with either of

---

1. Some of the issues before the court ordinarily would have been subject to preliminary motions to dismiss. Unfortunately, personnel changes in the United States Attorney's office and in this court have left jurisdictional issues unresolved.

the two males with whose selections she takes issue. Instead, Ms. Canty attempts to rely upon allegations of discriminatory statements or acts toward her to establish a general pattern of racism and sexism. The evidence demonstrates Ms. Canty was not idolized by those in classifications above her, but it also does not establish the racial or sexual discrimination she alleges.

The court was impressed by the testimony and the person of William "Sonny" Walker. According to Mr. Walker, Ms. Canty questioned almost any management decision that was ever made. Whenever a personnel decision was made in which blacks were not hired, Ms. Canty called and questioned the choice. If there was any prejudice demonstrated, it arose in a deferral to Ms. Canty.

The court can find no evidence of discrimination or prejudice in Mr. Walker's explanation of another's description of Ms. Canty as "niggardly". The court can find no evidence of discrimination or prejudice in Mr. Walker's speech questioning the life aspirations of many young blacks. The court can find no evidence of discrimination or prejudice in Ms. Canty having more than one supervisor who filed a review report on her.

There can be no doubt that Henrietta Canty made valuable contributions to the operation of the office of Economic Opportunity. There can also be no doubt her assertiveness and incessant challenges to the decisions of others did not endear her to management. The disappointments Henrietta Canty suffered during her tenure with the O.E.O. arose in spite of, and not because of, her race and sex. See the strikingly similar case, *Copeland v. Martinez*, 435 F.Supp. 1178 (D.D.C.1977).

Accordingly, plaintiff is awarded attorney's fees in the amount of $3,750.00. The parties are to bear their own costs and each pay one half of the cost of the transcript of the hearing.

SO ORDERED, this the 18th day of May, 1978.